IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

AHMADSHEHZAD KAYWAN,    )
    )
    Plaintiff,    )
    )
    v.    )    Civil Action No. 1:24-cv-1633 (RDA/IDD)
    )
ALDI LLC, *et al.*,    )
    )
    Defendants.    )
    )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Partial Motion to Dismiss (the "Motion") (Dkt. 18). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Plaintiff's Amended Complaint (Dkt. 16), Defendants' Memorandum in Support (Dkt. 19), Plaintiff's Opposition (Dkt. 21), and Defendants' Reply (Dkt. 22), this Court DENIES the Motion for the reasons that follow.

### I.  BACKGROUND

#### A.  Factual Background[1]

Plaintiff is a Muslim man of Middle Eastern (Afghan American) descent and national origin. Dkt. 16 ¶ 10. Plaintiff began working for Defendants in 2018 and most recently held the position of Senior Assistant Manager at a store in Broadlands, Virginia. *Id.* ¶ 15. Plaintiff reported

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

to Store Manger Daniel Whitmer and District Manager and personnel leader Laszlo Hangyas. *Id.* ¶ 16. Plaintiff's work included merchandizing products to maximize sales, facilitating the training of new employees, conducting store inventory counts, overseeing the execution of curbside pickup, counting the registers and taking stock of cash on hand, and otherwise assisting the store manager in supervision and maximizing sales and controlling expenses of the store. *Id.* ¶ 17. Plaintiff alleges that he "performed his job satisfactorily and met his employer's legitimate business expectations." *Id.* ¶ 18.

Plaintiff requested and was granted a religious accommodation to refrain from working on Fridays in observance of his faith. *Id.* ¶ 21. Nonetheless, Hangyas repeatedly scheduled Plaintiff to work on Fridays. *Id.* Other non-Muslim, non-Afghan American, and female employees were granted Fridays off without issue, and other non-Muslim, non-Afghan American employees were granted other days off to attend Christian religious services. *Id.* ¶ 22. Plaintiff asserts that Hangyas, who is Hispanic and a Christian, favored other Hispanic or Christian employees. *Id.* ¶ 23. In particular, Plaintiff alleges that Senior Assistant Manager Ruth Vaca received preferential treatment and scheduling to accommodate her religious practices. *Id.* Plaintiff alleges that Hangyas and Vaca would speak Spanish around him, knowing that he could not understand. *Id.* ¶ 24.

Plaintiff asserts that, on numerous occasions, he reminded Hangyas about his religious accommodation, but he continued to be scheduled on Fridays, causing distress and disruption of his religious practices. *Id.* ¶ 25. Whitmer, who is white, also pressured Plaintiff to forego his religious observances on Fridays to come to work. *Id.* ¶ 26. During the 2023 Ramadan period, Plaintiff requested to work only during the day so that he could observe fasting. *Id.* ¶ 27. His request was approved, but he was informed that such accommodations would not be provided in

2

future years. *Id.* Whitmer routinely failed to timely respond to Plaintiff's requests for prayer breaks, and Plaintiff alleges that Whitmer berated and criticized him for his religious observances, including by yelling at Plaintiff in front of customers and other associates. *Id.* ¶¶ 29-30.

At some point, Plaintiff reported monetary discrepancies in the safe and registers. *Id.* ¶ 31. Specifically, Plaintiff reported "a pattern of theft or embezzlement" to Whitmer and Hangyas. *Id.* ¶ 49. Plaintiff asserts that "these issues were intentionally or negligently mishandled and/or not addressed by his supervisors." *Id.* ¶ 31. Plaintiff was very concerned about these discrepancies because it was his responsibility to count the registers and take stock of inventory. *Id.* ¶ 32. Plaintiff asserts that he "reasonably and in good faith believed the money shortages were theft of Aldi funds by co-workers that could be written off by Aldi supervisors as accounting shortfalls." *Id.* ¶ 35.

At some point, Plaintiff reported instances of theft by Vaca to "HR" and, thereafter, disciplinary action was taken against Vaca. *Id.* ¶ 34. Some time later, it became known that Plaintiff "was the whistleblower," and he was "subjected to further retaliation and was eventually terminated on or about September 25, 2023 without explanation." *Id.* ¶ 36.

Plaintiff filed his Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission (the "EEOC") on June 13, 2024. *Id.* ¶ 7. The EEOC issued the Determination and Notice of Rights letter on June 17, 2024. *Id.* ¶ 8.

### B. Procedural Background

On September 16, 2024, Plaintiff filed his Complaint. Dkt. 1. In his Complaint, Plaintiff asserted three counts: (i) unlawful discrimination on the basis of national origin and religion under Title VII of the Civil Rights Act of 1964 ("Title VII"); (ii) unlawful retaliation under Title VII; and (iii) wrongful termination under Virginia public policy. Defendant Aldi Inc. filed its first

Partial Motion to Dismiss on January 21, 2025. Dkt. 9.[2] Defendant sought to dismiss: (i) Count I to the extent it is premised on national origin discrimination; (ii) Count II in its entirety; and (iii) Count III in its entirety. *Id.* On September 24, 2025, this Court granted Defendant's Partial Motion to Dismiss in its entirety, with leave to amend. Dkt. 15.

On October 8, 2025, Plaintiff filed his Amended Complaint. Dkt. 16. Defendants Aldi Inc. and Aldi, LLC ("Defendants") filed the instant Partial Motion to Dismiss on October 22, 2025. Dkt. 18. On November 5, 2025, Plaintiff filed his Opposition. Dkt. 21. On November 11, 2025, Defendants filed their Reply. Dkt. 22.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009)

---

[2] Defendant Aldi Inc. originally asserted that it alone was the proper defendant and improperly excluded Aldi, LLC from its first Partial Motion to Dismiss. Dkt. 9 at 1 n.1. In this Court's prior Memorandum Opinion and Order, the Court addressed this contention and noted that it was improper. Dkt. 15 at 1 n.1.

4

(quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).  Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion.  *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## III.  ANALYSIS

In his Amended Complaint, Plaintiff asserts two counts: (i) unlawful discrimination under Title VII, and (ii) wrongful termination under the Virginia Whistleblower Protection Act ("VWPA") at Va. Code § 40.1-27.3.  Dkt. 16.  In their Motion, Defendants seek to dismiss: (i) Count I to the extent it is premised on national origin discrimination, and (ii) Count II in its entirety.  Dkt. 18.

As a preliminary matter, because Plaintiff clarified in his Opposition that he is not asserting a claim premised on national origin discrimination, the Court construes Count I of the Amended Complaint to assert only a claim for unlawful discrimination on the basis of religion under Title VII.  *See* Dkt. 21 at 2.  Accordingly, the Court will deny as moot the portion of Defendants' Motion seeking to dismiss Count I to the extent it is premised on national origin discrimination.

As to Plaintiff's wrongful termination claim, the VWPA prohibits an employer from, *inter alia*, discharging an employee because the employee "in good faith reports a violation of any federal or state law or regulation to a supervisor."  Va. Code § 40.1-27.3(A)(1).  "The elements of a retaliatory discharge claim under Virginia law are that an employee: (1) made a good faith report of a federal or state violation to a supervisor, (2) was discharged by her employer, and (3) the report was the 'but for' cause of their discharge."  *Chamberlain-Loving v. Renal Treatment*

*Centers-Mid-Atl., Inc.*, 787 F. Supp. 3d 211, 217 (E.D. Va. 2025) (citing *Moore v. Copper River Shared Services, LLC*, 2024 WL 5454690, at *9 (Fairfax Cnty. Cir. Ct. Jan. 30, 2024)).

First, Defendants argue that Plaintiff does not sufficiently plead facts as to the good faith report element. Dkt. 19 at 6. A good faith report in a § 40.1-27.3 claim does not require a plaintiff to demonstrate that "the underlying report of unlawfulness was in fact meritorious . . . . Instead, a plaintiff must only allege that they 'subjectively and reasonably believed that [their] employer was engaged in unlawful [conduct].'" *Wimmer v. New Millennium Bldg. Sys., LLC*, 2026 WL 373046, at *3 (W.D. Va. Feb. 10, 2026) (internal citations omitted). Defendants assert that "Plaintiff merely alleges that he reported money discrepancies to his supervisor, not that he reported he thought the money was being stolen or embezzled." *Id.* However, in his Amended Complaint, Plaintiff specifically alleges that he "reported a pattern of theft or embezzlement from Aldi's daily cash register accounting to his superiors Mr. Whitmer and Mr. Hangyas and to Aldi HR," Dkt. 16 ¶ 49, and that he "reported instances of theft by Senior Assistant Manager Ruth Vaca to his superiors" and to HR, *id.* ¶¶ 34, 50. Thus, contrary to Defendants' assertion, Plaintiff has pled that he reported not only money discrepancies, but specifically theft and embezzlement by Vaca and others. Moreover, it is a reasonable inference that Plaintiff's report about theft by Vaca was meritorious, not just based on reasonable belief, as the report allegedly resulted in disciplinary action against Vaca. Dkt. 16 ¶ 34. Thus, Plaintiff alleges facts that plausibly satisfy the first element of a wrongful discharge claim under the VWPA.

Second, Defendants argue that Plaintiff's allegations of retaliation by his employer are "conclusory" because he does not specify the retaliatory conduct or when it took place. Dkt. 19 at 6-7. Defendants home in on Plaintiff's conclusory allegation that "[he] became the subject of retaliatory actions by Mr. Whitmer and Mr. Hangyas" after reporting money shortages in the

company registers. *Id.* at 6 (quoting Dkt. 16 ¶ 33). However, Defendants fail to acknowledge or dispute in their Motion to Dismiss the retaliatory action central to Plaintiff's Amended Complaint: his termination on or about September 25, 2023. Dkt. 16 ¶ 36. In their Reply, Defendants assert that the fact that Aldi allegedly took disciplinary action against Vaca "cut[s] against any possible inference of retaliation." Dkt. 22 at 4. But in making such contention, Defendants conflate the second element (retaliatory action) with the third element (causation) because casting doubt as to the reason for Plaintiff's termination is a causation issue. Defendants do not question that Plaintiff was indeed terminated by Aldi. And an employer's termination, or discharge, of an employee can be a retaliatory action under Va. Code § 40.1-27.3(A). Thus, Plaintiff alleges facts that plausibly satisfy the second element of a wrongful discharge claim under the VWPA.

Third, Defendants argue that Plaintiff fails to establish the causation element. "[A] plaintiff in a workplace retaliation claim can demonstrate causation by (1) 'show[ing] that the adverse act bears sufficient temporal proximity to the protected activity;' (2) 'showing "the existence of facts that suggest[] that the adverse action occurred because of the protected activity,"' or (3) a combination of the two." *Porter v. Blue Ridge Bankshares, Inc.*, 2025 WL 2025356, at *3 (E.D. Va. July 18, 2025) (quoting *Britt v. DeJoy*, 2022 WL 4280495, at *4 (4th Cir. Sept. 14, 2022)). Here, Plaintiff argues the Court may infer causation because he alleges (1) Vaca received "preferential treatment and favoritism" from Hangyas;[3] (2) Vaca was disciplined based on

---

[3] Although Defendants contend that Plaintiff's citations to specific language used in his Charge of Discrimination is an erroneous attempt to amend his Amended Complaint through his pleadings, *see* Dkt. 22 at 3, because Plaintiff attached the Charge to his Amended Complaint, the Court properly considers these allegations. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016) (noting that at the motion to dismiss stage, a court may consider documents attached to the complaint as exhibits per Federal Rule of Civil Procedure 10(c)). And, in any event, the allegations in the Charge are consistent with the allegations in the Amended Complaint.

Plaintiff's reports; (3) Hangyas learned that Plaintiff made the reports; (4) "not long after" that, Plaintiff was terminated; and (5) it can be reasonably inferred that, because Hangyas was "personnel leader," he made the decision to terminate Plaintiff. *See* Dkt. 21 at 4. Although Plaintiff does not allege facts to support a plausible claim of causation based on temporal proximity alone,[4] the Court finds that, at this stage, the combination of Plaintiff's allegations plausibly permits a reasonable inference of causation.

In sum, Plaintiff has alleged sufficient facts to plead each element of his VWPA claim. Thus, Plaintiff has plausibly stated a claim of wrongful termination in violation of the VWPA, and the Motion will also be denied as to this claim.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, it is hereby ORDERED that Defendants' Partial Motion to Dismiss (Dkt. 18) is DENIED; and it is

FURTHER ORDERED that a scheduling order will issue promptly.

It is SO ORDERED.

Alexandria, Virginia
April 15, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[4] Plaintiff alleges only one date in his Amended Complaint: September 25, 2023, the date of his alleged termination. Dkt. 16 ¶ 36. Plaintiff does not specify *when* he reported his suspicions of thefts and embezzlement—by Vaca or otherwise—to his superiors. Nor does Plaintiff specify when Hangyas learned that Plaintiff made the reports. Standing alone, Plaintiff's allegation that his termination was "not long after" his supervisors learned he had made the reports is too vague to support causation because it lacks the identification of a date to properly calculate whether temporal proximity exists. *See King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (recognizing that ordinarily a period of more than two months "is sufficiently long so as to weaken significantly the inference of causation between the two events").

8